KIRBY *et al. v.* KENT.

(Division A.   April 4, 1935.)

[160 So. 569.   No. 31647.]

458

**Alfred Stoner**, of Greenwood, for appellants.

**Means Johnston**, of Greenwood, for appellee.

460

**McGowen, J.,** delivered the opinion of the court.

S. J. Kent, intestate, died on August 3, 1934, by his own hand. On August 6, 1934, Mrs. Una K. Howard and Mrs. Jimmie K. White, sisters of the deceased, filed a petition in the chancery court of Leflore county, seeking to have R. L. Kirby appointed as administrator of the estate of the deceased, S. J. Kent. Upon that petition R. L. Kirby was by the court appointed administrator of the said estate, entered into bond, and qualified as such. It was alleged in the petition that the sisters were next of kin to the deceased; that the said deceased left surviving him his widow, Mrs. S. J. Kent, who, prior to the death of S. J. Kent, disclaimed all interest and rights against the said S. J. Kent, as shown by a copy of an agreement attached to the petition.

On the 31st day of August, 1934, the appellee, Mrs. Grace Harrison Kent, filed her petition alleging that she was the widow of S. J. Kent, deceased, and his sole heir at law, and asserted that, under section 1629, Code 1930, she was entitled to be appointed administratrix of the estate, and that R. L. Kirby should not have been appointed by the court as administrator; that she married S. J. Kent on May 19, 1934, and that they lived together until July 6th of the same year, when he called upon her and announced that he would file a bill for divorce, and desired to make an agreement in settlement of alimony between them. She further alleged that the paper executed by them was simply an agreement as to alimony in anticipation of divorce proceedings, and not an agreement to waive her rights as his widow, either as an heir or the first right to administer his estate. There was an allegation that she and Kent made a collusive agreement as to process to be served upon her and as to remaining away from court. It was also alleged by the appellee that the value of the estate of the deceased was about fourteen thousand dollars. The petitioner, Mrs. Kent, further prayed that Kirby be removed as administrator, that he be required to increase his bond until the estate should be turned over to her, and that letters of administration be granted to her.

The defendants, Mrs. Una K. Howard, Mrs. Jimmie K. White, and R. L. Kirby, administrator, appellants here, answered at great length. The gist of the answer is, in effect, that the written agreement signed and acknowledged by Kent and his wife, together with the filing by him of a bill for divorce with process returnable to the September term of that court, was intended by the parties as a settlement in a lump sum of all claims that the appellee might have against the deceased and his property, and was in full settlement of all claims against him and his property—that she would not make further claims against him, the said Kent, or his property.

The other ground of defense was that, although there had been a marriage ceremony between S. J. Kent and Grace Harrison Kent on the 19th day of May, 1934, such marriage was void for the reason that Mrs. Kent, at the time of the marriage, was then married to Howard Kirkpatrick, and had not been divorced from him; but that there had been an attempt on her part to procure a divorce from Kirkpatrick, and that a decree had been entered granting her a divorce on the 15th day of May, 1934. It was alleged in the answer that the decree of divorce was void for the reason that the petition showed that Mrs. Kent had perpetrated a fraud upon the court in procuring the same, as shown by the petition and record in the following particulars: (1) That she had alleged that the post office address of Kirkpatrick, the defendant in the divorce suit, was unknown to her after diligent search and inquiry, when in her bill for divorce from him she alleged that (2) her husband, Kirkpatrick, was in pursuance of a legal conviction of robbery with firearms, sentenced to a term of years in the Texas state penitentiary, at Huntsville, Texas, and was admitted there as a convict without being pardoned before having been sent there; and from this, that she did know his post office address, because she alleged that as a ground for divorce. The answer further stated that Kirkpatrick was paroled from the state penitentiary some ten months before the divorce bill was filed, and that Mrs. Kirkpatrick was with the defendant, in the divorce suit, in the state of Oklahoma. In the bill of divorce it was alleged that he was sent to the penitentiary on February 10, 1932, but that he deserted her on August 12, 1931, while she was ill in a hospital. (3) That the decree of divorce was void for the reason that under that state of facts there could not have been a willful, continued, and obstinate desertion for a space of more than two years next before the filing of the bill, for the reason that a part of the

time Kirkpatrick was in the state penitentiary involuntarily, and therefore could not be guilty of desertion.

The bill for divorce alleged that Mrs. Nellie Thurston Kirkpatrick, the complainant, was a resident citizen of Clay county, Mississippi, and that J. H. Kirkpatrick 'was a nonresident of the state. The decree for divorce granted, recited as follows:

"Mrs. Nellie Thurston Kirkpatrick, Comp't., v. J. H. Kirkpatrick, Respondent. No. 4207.

"Final Decree.

"Came on this cause to be heard upon this the 15th day of May, 1934, a day of the regular May, 1934 term of this court upon the original bill of complainant, proof of publication of summons as provided by law for J. H. Kirkpatrick, the respondent, who is a nonresident of the state of Mississippi, and upon proof heard in open court, and upon consideration thereof, the court finds as follows:

"That the court has full jurisdiction hereof, both of the subject matter and the parties, the respondent being, as aforesaid a nonresident of this state and he having legally been made a party respondent hereto by proper publication according to law, and proof of publication thereof having been properly made and filed herein according to law; and that complainant should be awarded a divorce from respondent upon the grounds named in her bill of desertion and of the respondent being sentenced to a term in the penitentiary and not being pardoned before being sent there, and that complainant's former name of Thurston should be restored to her in lieu of her present name of Kirkpatrick.

"Wherefore, it is hereby ordered, adjudged and decreed by the court that said complainant, Mrs. Nellie Thurston Kirkpatrick, be and she is hereby granted a divorce from said respondent, J. H. Kirkpatrick, upon said grounds, and that the bonds of matrimony here-

tofore existing between said parties be and the same hereby are forever dissolved and held for naught; and further, that the former name of complainant of Thurston be and the same hereby is restored to her in lieu of her name of Kirkpatrick.''

When the answer came in, Mrs. Kent moved to strike it from the files, because, as a whole, the answer did not constitute a defense to her petition for the removal of Kirby as administrator and for her appointment as administratrix as the widow of the deceased, which motion was sustained by the court; and Kirby was removed as administrator, ordered to account for and turn over the estate in his hands to Mrs. Kent, the appellee, who was, in the decree, appointed administratrix of the estate of the deceased, S. J. Kent, upon her qualifying according to law. In the meantime Kirby was required to increase his bond. Appeal is prosecuted here by R. L. Kirby, administrator, Mrs. Una K. Howard, and Mrs. Jimmie K. White, the appellant, from that decree.

1. Did Mrs. Kent release and surrender to Kent, by the written agreement, her right to administer his estate and her interest therein, no divorce ever having been granted to Kent from her?

The agreement is as follows:

''State of Mississippi, Leflore county.

''This agreement this day made and entered into by and between S. J. Kent and Mrs. Grace Kent, Witnesseth:

''That whereas on the 19th day of May, 1934, the said parties married in Leflore county, Mississippi and lived together as husband and wife until the 28th day of June, 1934, and have reached the conclusion that it will be impossible for them to continue to live together, and

''Whereas, a bill for divorce has already been prepared and the parties being desirous of settling any and all claims for alimony that the said Mrs. Kent might have against the said Mr. S. J. Kent under the circum-

stances consider the sum of one hundred and ninety-five dollars fair and adequate settlement of all alimony.

"Now, therefore, in consideration of the premises and the payment to the said Mrs. Kent of the sum of one hundred and ninety-five dollars, the said Mrs. Kent does hereby release and relinquish the said S. J. Kent from any and all claims now and hereafter that might arise by way of alimony. And the said settlement of alimony is hereby accepted as a full release and quittance of any and all liability present and future, in so far as any alimony or property adjustment between the said S. J. Kent and Mrs. Kent is concerned.

"The foregoing settlement is approved by the undersigned Knox Lamb as attorney for the said Mrs. Kent.

"Witness our hands this the 7th day of July, 1934.

"[Signed]  Mrs. S. J. Kent
"Mrs. Grace Kent
his
"[Signed]  S. J. X Kent
mark

"[Signed]  Knox Lamb
"Approved Attorney for Mrs. S. J. Kent."

It is patent that this contract cannot be construed to be other than an agreement for alimony in contemplation of a divorce. The use of the words property adjustment cannot be distorted into an agreement to relinquish her interest in his estate in the event the divorce was not granted. Viewing this contract by all that is stated in it and all the fair inferences that may be drawn therefrom, there is no way, by construction, to read into it a relinquishment of her rights as a widow in the event a divorce was not granted. It is not ambiguous. The rule is, as to a postnuptial agreement, that only such rights in the estate of the deceased spouse are barred as are expressly enumerated or reasonably inferable from the language employed therein. Clark v. Castner et al., 242

Mich. 608, 219 N. W. 675; 18 C. J. 857. In construing such agreements the purpose must be clear to exclude the surviving spouse from having his or her rights of inheritance in the deceased spouse; and they will be so construed only so far as the agreement clearly requires. A mere agreement for alimony in contemplation of divorce, whereby the same is paid on an agreement to live apart, is no bar to the right of the surviving spouse if no divorce has in fact been granted. See Clark v. Castner, supra, and the cases therein cited. The agreement in this case, on its face, is almost collusive, and it may be doubted whether or not it would have bound the court on the hearing of the divorce proceeding—in fact, it is well-nigh sufficient in its terms on its face to defeat the granting of a divorce. See Amis on Divorce and Separation in Mississippi, section 146-A.

This court, in the case of Wyatt v. Wyatt, 81 Miss. 219, 32 So. 317, held that a postnuptial agreement, clear in its terms, in contemplation of separation, in which one spouse relinquishes his or her right and interest in and to the property owned by the other which the survivor would inherit at the death of the other spouse, would be enforced as valid when based upon an adequate and fair consideration.

The statute, section 1629, Code 1930, conferred upon Mrs. Kent the right to administer; and section 1404, Code 1930, under the facts of this case, vested the title to the property of her husband in her upon his death, intestate, notwithstanding the agreement set up in bar thereof.

2. It is next insisted that the decree of divorce is void, and is subject to collateral attack in this proceeding. Counsel for the appellants cites the cases from our books in which it is held that a decree procured by fraud is voidable at the instance of those interested therein. All questions raised by appellants with reference to the grounds for divorce having been secured by fraud are

tantamount to the statement that, as to them, Mrs. Kent committed perjury, or else the court erroneously applied the law. Perjury is not ground for a collateral attack. Amis on Divorce and Separation in Mississippi, section 302.

The chancery court is vested with full jurisdiction of divorce proceedings by section 159 of the Constitution, and is of general jurisdiction. "Where a judgment of a court of general jurisdiction is attacked collaterally, unless the contrary affirmatively appears from the record, all jurisdictional facts are conclusively presumed to have existed, whether there are recitals in the record to show them or not; and this rule applies, although the judgment attacked was rendered by default, on constructive service of process alleged to be defective." Cotton v. Harlan, 124 Miss. 691, 87 So. 152. The record here is not in conflict with the divorce decree on the question of jurisdiction. Cf. Hester v. Hester, 103 Miss. 13, 60 So. 6, Ann. Cas. 1915B, 428.

In the case at bar we have an attack upon the divorce decree granted Mrs. Kent, then Kirkpatrick, from her husband at a time in which the decree recites specifically the finding of every fact necessary to the validity of the decree. At the time this decree was granted, neither Kent nor his heirs at law were parties or interested in that divorce proceeding. Subsequent to the divorce Kent married her, and subsequent to that time he died while that marital relation existed. Now, it would be of advantage to the appellants, the sisters and brother of the deceased, upon a collateral attack, to have the divorce between Mrs. Kirkpatrick and her husband set aside, in that they would acquire Kent's property.

In the case of Ruger v. Heckel, 85 N. Y. 483, the court held that the husband of a divorced woman has no cause of action to annul his marriage upon the ground that the divorce obtained from her former husband was pro-

cured by fraud and collusion. In the case of Kinnier v. Kinnier, 45 N. Y. 535, 6 Am. Rep. 132, the court held that a spouse who married a divorcee subsequent to a divorce from her former husband, has not been defrauded and has not been injured, where he sought to annul his marriage on the ground that her former divorce was fraudulent.

The case at bar is on all fours with the case of Tyler v. Aspinwall, 73 Conn. 493, 47 A. 755, 756, 54 L. R. A. 758, in its facts. In that case Tyler died intestate. His wife claimed an interest in his estate as his widow. Prior to their marriage she had been married to Aspinwall and lived with him for a number of years. She brought a suit for divorce from Aspinwall on the ground of intolerable cruelty, and a decree was granted. The plaintiffs in the proceeding before the court were the heirs at law of Charles Tyler, the deceased. She married Tyler subsequent to her divorce from Aspinwall. It was alleged by the heirs, in opposition to the widow's claim, that she had not been a resident of Connecticut for three years as required by the statute, and that the court was without jurisdiction to grant the decree of divorce. The court there said:

"The judgment which the plaintiffs seek to open is one of a peculiar character. It establishes the personal status of the parties to it in a particular which was of the highest importance to the parties and to the community. They had been married. It made them single and unmarried. If such a judgment can under any circumstances be reopened at the suit of a stranger, this judgment cannot be reopened at the suit of the plaintiffs. Its consequences, if harmful to them, are of too remote and indirect a character to give them any cause of action. The court is not called upon to exercise this power at the instance of such parties. Courts are instituted to give relief to parties whose rights have been invaded, and

to give it at the instance of such parties; and a party whose rights have not been invaded cannot be heard himself to complain if the court refuses to act at his instance in righting the wrongs of another who seeks no redress. The courts are practically unanimous in holding that it is not error to refuse to exercise the power here in question at the instance of a mere stranger, whose rights are not at all affected by the judgment he seeks to have set aside. [Citing authorities, including 1 Black, Judgm., sections 317, 359.] This is merely a special application of the wide general principle that courts will act only in behalf of parties who show themselves entitled to such action. They sit to vindicate rights at the instance of parties whose rights have been invaded, and not to vindicate mere abstract principles of justice at the instance of any one. In the case at bar the complaint, as finally amended, is merely a petition to set aside the judgment of divorce upon equitable grounds; and it shows upon its face, and without the aid of the allegations in the plea in abatement, that the plaintiffs were strangers to the judgment, and that their rights, legal or equitable, were in no way affected by it. There are no facts stated in the complaint which bring the plaintiffs within any of the recognized exceptions to the general rule that strangers to a judgment are not entitled to have it set aside. The mere fact that the setting aside of the judgment would be an advantage to the plaintiffs is not enough. They must show that some legal or equitable right of theirs was invaded by the judgment, before they can complain of the refusal of the court to act upon their petition to have it set aside.''

As to the allegation of fraud in the case at bar because of the post office address of Kirkpatrick, the answer of appellants alleging that Kirkpatrick was paroled in 1933, shows that he had left Texas months before the divorce bill was filed, so that the divorce is not void on the face of the decree and the record.

The question raised here by the appellants places them in the same position as the heirs at law in the Aspinwall case, supra, when they sought to have set aside the decree of divorce obtained by Mrs. Aspinwall prior to her marriage to their intestate, Tyler. In the case at bar they have set up the invalidity of the marriage because a divorce granted Mrs. Kent prior thereto is alleged to be void. They were not interested in that divorce. They cannot have it set aside as a matter of affirmative defense so that they may inherit, instead of the wife, the estate of the intestate. Their alleged rights are too remote, and the finding of the court in the divorce proceeding here involved is clear and unequivocal, and is not disputed by the record.

There are no allegations of facts appearing in the bill for divorce which are irreconcilable with the affirmative and positive adjudication of the court in its decree therein. On the other hand, they appear to be in harmony.

The court may have erroneously viewed the facts as applied to the law, but when the judgment became final, it is not subject to the collateral attack of a stranger who was not then interested in it. Kirkpatrick does not complain, neither does Mrs. Kirkpatrick. No one claiming by or through either of them is asserting any claim. The door is closed to others.

We conclude that the decree of divorce was not void on its face. The appellants are strangers to that record and cannot otherwise collaterally attack it.

Affirmed.