This case is before us both upon an appeal and a petition for writ of certiorari. The appellant-petitioner filed a bill of complaint in the Circuit Court of the Eleventh Judicial Circuit of Florida in and for Dade County on August 18, 1948. Her bill was denominated "A Bill for Declaratory Decree." Separate motions to dismiss the bill of complaint were filed by the appellees-respondents. We will consider the appeal and petition for writ of certiorari together, for each presents the same questions.
The bill of complaint alleged that the appellant-petitioner and the appellee-respondent Alfred F. deMarigny were married on May 19, 1942, and lived together as husband and wife until March of 1945 when they were separated; that in December of 1947 the appellant-petitioner discovered for the first time that there was a question as to whether or not the said appellee-respondent had ever secured a valid divorce from his former wife, the appellee-respondent Lucy Alice Cahen, prior to his marriage to the appellant-petitioner; that upon learning of such possibility she immediately took steps in the proper forum in the State of New York (which was and is her State of residence) to seek an annulment of her marriage. The appellant-petitioner further alleged that on or about March 22, 1937, the appellee-respondent Alfred F. deMarigny married the appellee-respondent Lucy Alice Cahen; that at the time of said marriage Alfred F. deMarigny was a subject of Great Britain and a resident of the Dominican Republic and Lucy Alice Cahen was a citizen of France; that shortly after such marriage the parties thereto sailed for the United States, arriving May 18, 1937, as alien visitors on temporary visitors' visas; that on June 30, 1937, the appellee-respondent Lucy Alice Cahen instituted suit for divorce against Alfred F. deMarigny in the Circuit Court of the Eleventh Judicial Circuit of Florida in and for Dade County and that a final decree of divorce was entered in such proceeding on July 6, 1937.
The bill of complaint also charged that fraud was perpetrated on the said Circuit Court in such divorce action in that said court did not acquire jurisdiction of the parties or the subject matter because both parties were and are foreign nationals and never acquired a permanent residence in the United States and that the appellee-respondent Cahen could not have acquired a legally sufficient residence in the State of Florida for the purpose of securing a divorce because she was in this Country on a temporary visitor's visa. The appellant-petitioner then averred that in addition to the foregoing infirmity the court did not and could not acquire jurisdiction of the parties or subject matter because the plaintiff in such divorce proceeding did not reside in the State of Florida for more than 90 days preceding the filing of her bill of complaint. It was also asserted that the plaintiff in *Page 444 
said divorce action returned to her home in France immediately following the entry of the final decree of divorce.
The prayer of the appellant-petitioner in her bill in the instant suit is as follows: "That this honorable Court under the provisions of Chapter 21820, Laws of Florida 1943, inquire into the subject matter hereof and determine the force and effect of the decree of divorce hereinabove referred to and whether said decree is a valid and subsisting one or a nullity by reason of the fraud hereinabove set forth." There was also a prayer for general relief.
Motions to dismiss filed severally by the appellees-respondents were granted by the Chancellor and the said bill of complaint was dismissed. From this order the appeal herein was prosecuted and subsequently a petition for writ of certiorari to review the same order was filed by the appellant as petitioner.
Two primary questions are presented for our determination. The first of these questions is whether the appellant-petitioner can maintain a bill of this nature under our declaratory decree statute Chapter 21820, Laws of Florida 1943. The second question is whether her bill, if treated as an independent bill in equity, justifies equitable relief. The former query must be concluded by our construction and interpretation of Chapter 21820, Laws of Florida 1943. The answer to the latter interrogatory hinges upon whether the divorce decree here under attack is absolutely void or voidable only. There are, however, other considerations which will be discussed hereinafter.
Chapter 21820, Laws of Florida 1943, which is carried as Chapter 87, Florida Statutes Annotated, contains among other things the following pertinent provisions:
"87.02. Power to construe, etc.
"Any person claiming to be interested or who may be in doubt as to his rights under a deed, will, contract or other article, memorandum or instrument in writing or whose rights, status or other equitable or legal relations are affected by a statute, or any regulation made under statutory authority, or by municipal ordinance, contract, deed, will, franchise, or other article, memorandum or instrument in writing may have determined any question of construction or validity arising under such statute, regulation, municipal ordinance, contract, deed, will, franchise, or other article, memorandum or instrument in writing, or any part thereof, and obtain a declaration of rights, status or other equitable or legal relations thereunder."
It will be observed that the statute does not contain either of the words "judgment" or "decree" nor can any word of similar connotation be found therein. The only language of the statute upon which the appellant-petitioner could possibly bottom her bill for a declaratory decree would be the words "or other article, memorandum or instrument in writing". It is noted that such language is immediately preceded by the verbiage "by a municipal ordinance, contract, deed, will, franchise". A proper syntactical interpretation of the wording of this statute requires the invocation of the principle of ejusdem generis. The words "or other article, memorandum or instrument in writing" are limited by the words "or by a municipal ordinance, contract, deed, will, franchise". In other words, the "instrument in writing" should be of the same kind or class as those instruments which are specifically enumerated and such phrase connotes only instruments of the same class or variety. Childrens Bootery v. Sutker, 91 Fla. 60, 107 So. 345, 44 A.L.R. 698; Cleary v. Dade County, Florida, 160 Fla. 892, 37 So.2d 248. Neither a "judgment" nor a "decree" of a court of competent jurisdiction can be said to be similar to "a municipal ordinance, contract, deed, will, franchise".
Moreover, if our construction should be contra the appellant-petitioner could not maintain the instant action as a bill for a declaratory judgment or decree under our statute, for the decree, the validity of which is questioned, is clear and unambiguous. The only tenable exception to the rule that a declaratory judgment proceeding is not an appropriate method of questioning a final judgment or decree (valid on the face of the record) is in case the judgment or decree has become the *Page 445 
source of definite rights and is unclear or ambiguous. See Borchard on Declaratory Judgments, Second Edition, page 356. The principal objective of the legislature in adopting the act providing for declaratory judgments or decrees was to establish a means whereby one might obtain a judicial declaration of rights never before determined but in no sense was it the legislative purpose to enable such person to secure a determination as to whether rights previously adjudicated had been properly resolved.
Our declaratory decree statute is no substitute for established procedure for review of final judgments or decrees. Nor is it a device for collateral attack upon them.
We quote with approval from the able concurring opinion prepared by Mr. Justice Brown in the case of Ready v. Safeway Rock Co., 157 Fla. 27, 24 So.2d 808, 812, as follows: "Nor should it [the declaratory decree statute] be so broadly construed as to make it a procedural juggernaut which would ride down and crush out other valuable well defined and time-proven equitable and statutory remedies."
It is our conclusion that the appellant-petitioner has not established a right to a declaratory decree.
Our view appears to be supported by the weight of authority throughout the Country as well as by American Jurisprudence Vol. 16, pages 295, 296, Section 23, which we quote with approval: "The act is not intended to elucidate or interpret judicial decrees or judgments already entered, or to modify or declare rights thereunder. Hence, a declaratory judgment proceeding is not an appropriate method of obtaining the vacation of a judgment; and it would be entirely beyond the purpose and scope of the statute, as well as contrary to fundamental principles for a court to attempt in such a proceeding, to review and determine the validity of a judgment of a court of coordinate jurisdiction." See also Kings County Trust Co. v. Melville, 127 Misc. 374, 216 N.Y.S. 278; Ladner v. Siegel, 294 Pa. 368,144 A. 274; City of Williamsport v. Williamsport Water Co., 300 Pa. 439,150 A. 652; Ex parte Darby, 157 S.C. 434, 154 S.E. 632 and Heller v. Shapiro, 208 Wis. 310, 242 N.W. 174, 87 A.L.R. 1201.
The appellant-petitioner attempts to justify her position by asserting that she finds herself in a state of uncertainty and insecurity and that our declaratory decree statute provides for a declaration of one's rights and status; that the Circuit Court of the Eleventh Judicial Circuit in and for Dade County, Florida, did not have jurisdiction to enter the decree under attack for two reasons: (1) because the parties were aliens, which fact neither disclosed to the court; (2) because of false testimony concerning a jurisdictional prerequisite, to-wit: 90 days residence in the State of Florida; and that she should be permitted to show the invalidity of this decree, if for no other reason, because the State, interested as it is in the welfare of society, is a third party to every divorce suit.
We have disposed of her first contention by holding that our declaratory decree statute does not, in any event, contemplate a declaration of one's status or rights, under an unambiguous decree of a court of competent jurisdiction which was acquired or were developed subsequent thereto.
So now we turn to a consideration of the question whether the appellant-petitioner can maintain her bill as an independent bill in equity. The bill of complaint constitutes a collateral attack upon a final decree of divorce which was rendered by a court of competent jurisdiction and which appears, upon the record of the proceedings in the cause in which it was entered, to be valid in every respect.
Under such circumstances a final decree is at most voidable only. Ponder v. Moseley, 2 Fla. 207, 48 Am.Dec. 194; Bryant v. Bryant, 101 Fla. 179, 133 So. 635. It is necessary in this case in order for the appellant-petitioner to show the invalidity of the final decree of divorce for her to bring before the court matters which are dehors the record. We have held many times that this may not be done by collateral attack. Lucy v. Deas, 59 Fla. 552, 52 So. 515; Malone v. Meres, 91 Fla. 709, 109 So. 677; Towns v. State, 102 Fla. 188, 135 So. 822; Bemis v. Loftin, 127 Fla. 515, 173 So. 683; Crosby v. *Page 446 
Burleson, 142 Fla. 443, 195 So. 202; Ennis v. Giblin, 147 Fla. 113, 2 So.2d 382; State v. Howell, 156 Fla. 163, 23 So.2d 153.
There is almost unanimity of opinion among the authorities to the effect that neither of the parties to the divorce proceedings can impeach the decree. Such holdings are predicated upon the maxim "he who comes into equity must come with clean hands." Hall v. Hall, 93 Fla. 709, 112 So. 622. Particular attention should be given to pages 628-629, and cases cited on the latter.
The appellant contends that she — a third party — may attack the divorce decree for by some unexplained process she either considers that she represents the State or that the State is, or should be considered to be, an interested party in this litigation because it was, theoretically at least, an interested third party to the divorce proceedings which led to the entry of the final decree here under attack. She relies particularly upon the case of Senor v. Senor, Supreme Court N.Y., 272 App. Div. 306,70 N.Y.S.2d 909, which was affirmed without opinion by the Court of Appeals of that State in 297 N.Y. 800, 78 N.E.2d 20. An examination of the opinion of the Appellate Division of the Supreme Court discloses the fact that it does recognize a ground of distinction between an attack upon a decree by either party thereto and an attack by third persons not parties to the divorce proceedings and makes particular reference to the concern of the sovereign state with the welfare of society. We quote from the case of Senor v. Senor, 70 N.Y.S.2d 909, 915, as follows:
"And, further, as to the grounds of distinction between an attack upon the decree by the parties thereto and an attack by third persons not party to the divorce proceedings, the Supreme Court said [meaning the United States Supreme Court in the case of Williams v. State of North Carolina, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577, 157 A.L.R. 1366]:
"`It is one thing to reopen an issue that has been settled after appropriate opportunity to present their contentions has been afforded to all who had an interest in its adjudication. This applies also to jurisdictional questions. After a contest these cannot be relitigated as between the parties. Forsyth v. [City of] Hammond, 166 U.S. 506, 517, 17 S.Ct. 665, 670, 41 L.Ed. 1095; Chicago Life Ins. Co. v. Cherry, 244 U.S. 25, 30, 37 S.Ct. 492, 493, 61 L.Ed. 966; Davis v. Davis, supra [305 U.S. 32, 59 S.Ct. 3, 83 L.Ed. 26, 118 A.L.R. 1518]. But those not parties to a litigation ought not to be foreclosed by the interested actions of others; especially not a State which is concerned with the vindication of its own social policy. * * *'"
The legal fiction of the State being an interested third party in a divorce suit had its genesis in morality, decency, "the welfare of society and the sanctity of the marriage relation." When these worthy objectives have been accommodated the interest of the State is placed at rest. So we may well inquire whether in this case the State's interest in society's welfare should be investigated (regardless of the fact that the State is not actually, nor by judicial fiat theoretically, a party to these proceedings) and whether good morals, decency and indeed the sanctity of the marriage relation dictate or require an opinion favorable to the appellant-petitioner.
Assuming that the court should, in a sense, represent the State as an interested third party in a proceeding of this kind, it is our view that the interests of society, would be better served by an adoption of the lesser of two evils — non datur tertium. We mean that if the parties are left as the court found them an alleged fraud upon the court might thus appear to be sanctioned; yet, on the other hand, a judgment favorable to appellant-petitioner would amount to a judicial determination that both the appellant-petitioner and the appellee-respondent Alfred F. deMarigny had lived in a manifest state of adultery and would open wide an avenue for fraud (not to mention blackmail) of a character most difficult to discover. If the appellant-petitioner may maintain the instant suit it would be possible for any party to a fraudulent divorce decree, which is valid on the face of the record, to conspire with another person to enter into a marriage with him or her with the sole purpose in mind of *Page 447 
having said spouse thereafter bring a proceeding to impeach the divorce decree and thus accomplish indirectly, by means of such conspiracy and fraud, that which could not be accomplished directly. It is our conclusion that the lesser evil would result from a judgment unfavorable to the appellant-petitioner's position and that decency, good morals and the welfare of society would be more nearly satisfied by such ruling. Certainly, such a decision would be less inimicable to the interests of our citizens as a whole than one favorable to the appellant-petitioner for the latter, in our opinion, could lead to "widespread social disorder". See Shea v. Shea, 270 App. Div. 527,60 N.Y.S.2d 823, at page 827.
The decree of divorce which is under attack by the appellant-petitioner has not adversely affected the status or rights of the appellant-petitioner which existed at the time of the entry of said decree. Indeed, it has protected her (and such protection continues) in her after-acquired marital status for without it her relationship with deMarigny necessarily would have been classified as meretricious.
As aforestated, the appellant-petitioner was neither defrauded nor injured for she occupied no status and had no rights at the time of the entry of the divorce decree sought to be invalidated which were or could have been affected thereby. The law on this subject is as stated in Freeman on Judgments, Vol. 1, page 636, Section 319: "It must not, however, be understood that all strangers are entitled to impeach a judgment. It is only those strangers who, if the judgment were given full credit and effect would be prejudiced in regard to some pre-existing right, that are permitted to impeach the judgment. Being neither parties to the action, nor entitled to manage the cause, nor appeal from the judgment, they are by law allowed to impeach it whenever it isattempted to be enforced against them so as to affect rights orinterests acquired prior to its rendition." (Italics ours.)
In Vol. 49, C.J.S., Judgments, § 414, page 818, the same principle is enunciated. See Tyler v. Aspinwall, 73 Conn. 493,47 A. 755, 54 L.R.A. 758; Kirby v. Kent, 172 Miss. 457, 160 So. 569, 99 A.L.R. 1303; Ex parte Edwards, 183 Ala. 659, 62 So. 775; Sykes v. Sykes, 162 Miss. 487, 139 So. 853; Kinnier v. Kinnier, 45 N.Y. 535, 6 Am.Rep. 132; Magevney v. Karsch, 167 Tenn. 32, 65 S.W.2d 562, 92 A.L.R. 343, 348; Tallentine v. Burkhart, 153 Fla. 278, 14 So.2d 395.
It may be that the appellant-petitioner finds herself in an unhappy situation by virtue, probably, of the fact that in the State of her residence she does not have a ground for divorce and possibly, unless successful in this suit, no basis for an annulment. Her bill of complaint discloses the fact that she and Alfred F. deMarigny are now separated and that she, prior to the commencement of the instant suit, had filed an annulment action in one of the courts of New York. If our inference, which appears to be reasonable, should be correct the state in which the appellant-petitioner finds herself is no different from that of many another person who has awakened to find the marital bark occupying the figurative position of a rudderless ship tossing fitfully upon the fretful, restless waves of the matrimonial sea, with no escape from its rage apparent — no haven in sight. An existing ground for divorce might provide an escape. However, if appellant-petitioner had a recognized ground for divorce she should have asserted (and might yet in the proper jurisdiction assert) it. Her problem cannot be solved by use of the ingenious device here presented, for, although adroit, it is potentially dangerous. We should not and will not set such a precedent.
The order of dismissal from which this appeal was prosecuted should be and it is hereby affirmed and the petition for writ of certiorari to review said order should be and it is hereby denied.
ADAMS, C.J., and TERRELL, THOMAS and ROBERTS, JJ., concur.
CHAPMAN, J., agrees to the conclusion.
SEBRING, J., not participating because of illness. *Page 448