CHARLES SHAMMAS, ALSO KNOWN AS FATHALLA SHAMMAS, PLAINTIFF-APPELLANT, v. MARY SHAMMAS, DEFENDANT.

WILLIAM W. EVANS AND WILLIAM K. AZAR, ADMINISTRATORS OF THE ESTATE OF MARY KOODRAY SHAMMAS, DECEASED, PETITIONERS-RESPONDENTS.

Argued March 31, 1952—Decided April 28, 1952.

Mr. *Thomas F. Meehan* argued the cause for the appellant (*Mr. John J. Meehan*, attorney; *Mr. J. Mortimer Rubenstein*, of counsel).

Mr. *William W. Evans* argued the cause for respondents (*Messrs. Evans, Hand & Evans*, attorneys).

The opinion of the court was delivered by

WILLIAM J. BRENNAN, JR., J. Charles Shammas filed a petition for divorce from Mary Shammas in the former Court of Chancery of May 4, 1947, alleging desertion. Mary Shammas answered denying the desertion and alleged that Charles Shammas after their marriage had returned to Syria

and there entered into a bigamous marriage with one Bahia Deeb and lived in adultery with her. At the final hearing Shammas denied on cross-examination that he contracted a marriage with Bahia Deeb or committed adultery with her. Before the case was fully tried a money settlement was made and Mary Shammas withdrew her answer and abandoned her defense to the desertion charge. The cause proceeded uncontested and a decree *nisi* was entered April 20, 1948, and made final July 21, 1948.

Charles Shammas then married Mary Koodray, who died April 11, 1949, intestate, survived by Charles Shammas and six children of a former marriage. On May 2, 1949, letters of administration of her estate were issued to William W. Evans and William K. Azar, members of the bar of this State and, respectively, the attorney of the children and the attorney of Charles Shammas.

On October 24, 1949, Mr. Evans, as administrator, filed a petition in the cause (Mr. Azar subsequently was admitted as a co-petitioner), praying that the decrees *nisi* and final be set aside and that Charles Shammas be adjudged guilty of contempt on the ground that his denial under oath that he entered into a bigamous marriage with Bahia Deeb and committed adultery with her was willfully false and constituted a fraud upon the court. An order to show cause issued and after hearing, at which Mary Shammas did not appear and was not represented and Charles Shammas alone made a defense, the Chancery Division found that Shammas' testimony at the final hearing on his divorce petition was willfully false in the particulars charged and entered an order on September 24, 1951, vacating and setting aside the decrees *nisi* and final and adjudging him guilty of contempt of court. Shammas appealed from said order to the Appellate Division and the appeal has been certified here on our own motion.

The power of our courts at the instance of a party to open a final judgment in a civil action upon good cause shown has long been settled beyond controversy. *Assets*

*Development Co. v. Wall,* 97 *N. J. L.* 468 (*E. & A.* 1922). *Rule* 3:60–2 merely declares the previously existing law in that regard. It reads:

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which would probably alter the judgment, order or proceeding and which by due diligence could not have been discovered in time to move for a new trial under Rule 3:59-2; (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment or order is void; (5) the judgment or order has been satisfied, released, or discharged, or a prior judgment or order upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or order should have prospective application; or (6) any other reason justifying relief from the operation of the judgement or order. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order or proceeding was entered or taken. A motion under *Rule* 3:60–2 does not suspend the operation of any judgment, order or proceeding or affect the finality of a final judgment. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding; nor does it limit the court's power to set aside a judgment, order or proceeding for fraud upon the court. Writs of *coram nobis, coram vobis, audita querela, venire facias de novo,* motions to award a repleader, to arrest a judgment or, to give judgment notwithstanding a verdict, bills of review, bills in the nature of a bill of review and petitions for rehearing are superseded, and the procedure for obtaining a new trial or any relief from a judgment or order shall be by motion as prescribed in these rules or, where such relief is sought, by an independent action."

 The rule simplifies the procedure and permits the exercise of the power to open a final judgment, for the reasons specified in subdivisions (1), (2) and (3), upon motion made within a reasonable time not more than one year after the entry of the final judgment [see, however, as to this time limit, *Klapprott v. U. S.,* 335 *U. S.* 601, 69 *S. Ct.* 384, 93 *L. Ed.* 266 (1949), remand modified in 336 *U. S.* 942, 69 *S. Ct.* 384, 93 *L. Ed.* 1099 (1949), and *Wilford v. Sigmund Eisner Company,* 13 *N. J. Super.* 27 (*App. Div.* 1951)], and, for the reasons specified in subdivisions (4), (5) and (6) and for fraud upon the court, without limitation as to time. The

proceeding by motion in the cause, although not limiting the power of the court to entertain an independent action in a proper case, supersedes the largely obsolete ancillary common law and equitable procedures listed in the rule and is declaratory of the long standing policy of our law to require that relief from a final judgment of a court of this State be sought in the action in which the judgment was rendered when that remedy is adequate. *Kearns v. Kearns,* 70 *N. J. Eq.* 483 (*Ch.* 1905). The motion procedure applies to relief sought upon the ground of fraud upon the court, differing from the requirement under the comparable amended *Federal Rule* 60(*b*) that relief on that ground must be the subject of an independent action. *Tentative Draft, Rules Governing all of the Courts of New Jersey, Comment on fourth sentence of Rule* 3 :60–2, *p.* 224.

However, relief for any reason allowed by *Rule* 3 :60–2 rests in the sound discretion of the trial court, controlled by established principles. Equitable principles are the guide in administering relief to determine whether in the particular circumstances justice and equity require that relief be granted or denied. *La Bell v. Quasdorf,* 116 *N. J. L.* 368 (*Sup. Ct.* 1936).

Perjurious testimony alone and not accompanied or concealed by other and collateral acts of fraud may be a ground for relief as a fraud upon the court in a proper case. The contrary view expressed in *U. S. v. Throckmorton,* 98 *U. S.* 61, 25 *L. Ed.* 93 (1878), and recently repeated in *Dowdy v. Hawfield,* 189 *F.* 2d 637 (*Ct. App., D. C.* 1951), *cert.* den. 342 *U. S.* 830, 72 *S. Ct.* 54, 96 *L. Ed.* —— (1951), when interpreting *Federal Rule* 60(*b*) is not favored by us. That view holds that perjurious testimony standing alone is intrinsic fraud and that relief for a fraud upon the court is limited to "frauds, extrinsic or collateral, to the matter tried by the court." A public policy that there be an end to litigation is given for the distinction: "* * * the mischief of retrying every case in which the judgment or decree rendered on false testimony, given by perjured witnesses,

\* \* \*, would be greater, by reason of the endless nature of the strife, than any compensation arising from doing justice in individual cases." *U. S. v. Throckmorton, supra,* 98 *U. S. pp.* 68–69, 25 *L. Ed. p.* 96. Whether the *Throckmorton* principle is still controlling law in the federal courts is not clear. It has been suggested that the case may have been overruled by the subsequent decision in *Marshall v. Holmes,* 141 *U. S.* 589, 12 *S. Ct.* 62, 35 *L. Ed.* 870 (1891). *Publicker v. Shallcross,* 3 *Cir.,* 106 *F. 2d* 949 (*C. C. A.* 3 1939), *cert.* den. 308 *U. S.* 624, 84 *L. Ed.* 521 (1940). However, both decisions were cited in *Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* 322 *U. S.* 238, 64 *S. Ct.* 997, 88 *L. Ed.* 1250 (1944), without giving a clear answer to the question. And see *Josserand v. Taylor,* 159 *F. 2d* 249, 34 *C. C. P. A., Patents,* 824 (*Ct. Cust. & Pat. App.* 1946); *Annotations,* 126 *A. L. R.* 390; 88 *A. L. R.* 1201. Both *Rule* 3:60–2 and *Federal Rule* 60(*b*) expressly abandon the distinction for the purposes of a motion by a party, or his legal representative, made within one year of the final judgment by providing that "the court may relieve a party or his legal representative from a final judgment \* \* \* for \* \* \* (3) fraud (whether heretofore denominated intrinsic or extrinsic) \* \* \* of an adverse party." *Balip Automotive Repairs, Inc., v. Atlantic Casualty Ins. Co.,* 7 *N. J.* 152 (1951), affirming 8 *N. J. Super.* 238 (*App. Div.* 1950) which reversed on the merits 6 *N. J. Super.* 511 (*Law Div.* 1949). However, the fourth sentence of the two rules allowing relief without time limitation for "fraud upon the court" is not similarly specific. Nevertheless, upon principle, we hold that relief for fraud upon the court may be allowed under our rule whether the fraud charged is denominated intrinsic or extrinsic. The notion that repeated retrials of cases may be expected to follow the setting aside of judgments rendered on false testimony will not withstand critical analysis. Rather it is more logical to anticipate that the guilty litigant committing or suborning testimony will not risk pursuing the cause further. And, in any event, a court may not set

aside a final judgment merely because some testimony is perjured. All perjury is an affront to the dignity of the court and to the integrity of the judicial process, but the law is not without other effective means to punish the perpetrator of the crime. *Cf. Swanson v. Swanson,* 8 *N. J.* 169 (1951). Perjured testimony that warrants disturbance of a final judgment must be shown by clear, convincing and satisfactory evidence to have been, not false merely, but to have been willfully and purposely falsely given, and to have been material to the issue tried and not merely cumulative but probably to have controlled the result. Further, a party seeking to be relieved from the judgment must show that the fact of the falsity of the testimony could not have been discovered by reasonable diligence in time to offset it at the trial or that for other good reason the failure to use diligence is in all the circumstances not a bar to relief. *Balip Automotive Repairs, Inc., v. Atlantic Casualty Ins. Co., supra.* Clearly, the necessity to satisfy these tests before the judgment may be disturbed is itself a deterrent to repeated litigation of the same factual issues. See 22 *Harvard Law Review,* 600. For these reasons we agree that it is "a journey into futility to attempt a distinction between extrinsic and intrinsic matter." Moore & Rogers, Federal Relief from Civil Judgments, 55 *Yale Law Journal,* 623, at 658 (June 1946). "* * * the spectacle of the machinery of the law bearing down mercilessly, and perhaps ruinously, to collect and deliver over the fruits of undoubted fraud (is) peculiarly odious." 126 *A. L. R.* 393. Plainly, the encouragement of vexatious litigation is the lesser evil. We prefer to follow the equity of the matter and to take away an unjust judgment obtained by vital perjury when the injustice and inequity of allowing it to stand are made evident.

But the administrators of the estate of Mary Koodray Shammas are strangers to the record in the divorce suit and *Rule* 3:60–2 by its express terms authorizes a direct attack upon a final judgment, order or proceeding only by a party to the judgment or his legal representatives. This is in

keeping with the general rule followed by the great weight of authority that "a stranger to the record has no standing directly to attack a judgment either by a motion (or petition) in the original proceeding, or by an independent suit, irrespective of whether the grounds urged in support of the attack go to the jurisdiction and if proven, render the judgment void, or concern only irregularities and defects which make the judgment voidable at best." 12 *A. L. R. 2d* 717, at 727 (1950). In refusing to listen to a stranger who attempts a direct attack upon a final judgment as obtained by fraud the court does not aid in giving effect to the fraud but simply regards the stranger as a suitor without a cause of action and rejects his petition because he is not aggrieved. The rule has been applied to judgments and decrees of divorce, and is supported by the following cases where such judgments or decrees were sought, as here, to be attacked directly by strangers to the record: *Old Colony Trust Company v. Porter,* 324 *Mass.* 581, 88 *N. E. 2d* 135 (*Sup. Jud. Ct.* 1949); *Tyler v. Aspinwall,* 73 *Conn.* 493, 47 *A.* 755 (*Sup. Ct. Err.* 1901); *Brokaw v. Brokaw,* 99 *Ind. App.* 385, 192 *N. E.* 728 (*App. Ct.* 1934); *Baugh v. Baugh,* 37 *Mich.* 59, 26 *Am. Rep.* 495 (*Sup. Ct.* 1877); *Tuttle v. Tuttle,* 89 *N. H.* 219, 196 *A.* 624 (*Sup. Ct.* 1938); *Ruger v. Heckel,* 85 *N. Y.* 483 (*Ct. App.* 1881); *Suiter v. Suiter,* 74 *Ohio App.* 44, 57 *N. E. 2d* 616 (*Ct. App.* 1944); *James v. James,* 131 *Okla.* 276, 268 *P.* 726 (*Sup. Ct.* 1928); *Broduer v. Broduer,* 53 *R. I.* 450, 167 *A.* 104 (*Sup. Ct.* 1933); *Martocello v. Martocello,* 197 *Ga.* 629, 30 *S. E. 2d* 108 (*Sup. Ct.* 1944); see also *deMarigny v. deMarigny,* 43 *So. 2d* 442 (*Fla. Sup. Ct.* 1949); *Van Slyke v. Van Slyke,* 186 *Mich.* 324, 152 *N. W.* 921 (*Sup. Ct.* 1915); *Kirby v. Kent,* 172 *Miss.* 457, 160 *So.* 569 (*Sup. Ct.* 1935). Indeed many authorities hold that neither a direct nor collateral attack may be made upon the decree for defects which do not render the decree void but only voidable. *Farr v. Farr,* 190 *Ia.* 1005, 181 *N. W.* 268 (*Sup. Ct.* 1921); *Sykes v. Sykes,* 162 *Miss.* 487, 139 *So.* 853 (*Sup. Ct.* 1932); *Reger v. Reger,* 316 *Mo.* 1310,

293 *S. W.* 414 (*Sup. Ct.* 1927); *Deyette v. Deyette,* 92 *Vt.* 305, 104 *A.* 232 (*Sup. Ct.* 1918); 1 *Freeman on Judgments* (*5th ed.*), *pp.* 521, 528, 636, 637, 639; but see *Old Colony Trust Company v. Porter, supra; cf. Anonymous v. Anonymous,* 85 *A.* 2d 706 (*Del. Super. Ct.* 1951).

If *In re Mullineaux,* 76 *N. J. L.* 396 (*Sup. Ct.* 1908) seems contrary to the general rule in sustaining the standing of the grantee of a judgment debtor to make a direct attack upon the after-acquired judgment as void for defective service upon the debtor, the decision nonetheless rests upon the considerations that the grantee by reason of the grant had an interest at the time of the entry of the judgment which was prejudiced by such entry, and the defect charged rendered the judgment void, neither of which considerations is present here.

The ground of attack here renders the decree voidable and not void. The former Court of Chancery concededly had jurisdiction of the parties and of the subject matter. And neither Mary Koodray Shammas nor the administrators of her estate had any preexisting right which was prejudiced by the entry of the divorce decree. Mary Koodray Shammas did not then, nor did she at any time before her death during her marriage to Shammas, stand in the relation of either the petitioner or the respondent in the original action, nor did she succeed to the rights of either of them. On August 26, 1948, she married Shammas, when, if the divorce decree was valid, she assumed the marital status with him. As the result of this status she had no interest adverse to Mary Shammas, the respondent in the divorce suit, and certainly none adverse to Shammas. This status, which it must be assumed Mary Koodray Shammas then desired to exist and acted upon, could only be maintained if the divorce decree was supported. She thus had no interest at the time prejudiced by the decree and the law therefore gave her no standing to make a direct attack upon the decree in her lifetime, and this apart from the effect of her pre-marital knowledge, disclosed in the evidence, of the allegations that Shammas

had contracted a bigamous marriage with Bahia Deeb. As she was without standing to make a direct attack, it necessarily follows that her administrators have none. True, their success in vacating the divorce decree has the effect of invalidating their decedent's marriage to Shammas so that her children by her former marriage inherit her property to the exclusion of Shammas. But the children's rights of inheritance were too remote at the time of the entry of the divorce decree and were not such legally or equitably as to be said to have been invaded by its entry. *Kirby v. Kent, supra*.

Nor is the result different if we view the petition as an action by members of the bar out of regard for their obligation as officers of the court to bring to the attention of the court an alleged fraud upon the court. Despite the obligation imposed upon them as attorneys to inform the court of the facts known to them, their standing as administrators is nonetheless that of strangers having no right to make a direct attack upon the divorce decree. *Cf. Carton v. Borden*, 8 *N. J.* 352 (1951). And even if we view their petition as informative merely, but sufficient nevertheless to bring into action the inherent power of the court to control its own judgments to protect itself from the fraud of litigants, and consider as unimportant the question of the status of the administrators to maintain the proceeding, other considerations in addition to those already mentioned should, we think, have prompted the trial court to refuse to vacate the divorce decree in the instant case. Mary Koodray Shammas was presumably content in her lifetime to accept the protection provided by the decree for her after-acquired marital status. It is uncharitable, to say the least, after her voice is silenced by death to brand as meretricious her relationship with Charles Shammas merely to increase the inheritance of her children. And Mary Shammas, too, may have re-married. Whether or not she has does not appear. What of her second husband, if any? Innocent persons should not be involved in an intolerable situation. That one or both of the divorced parties have remarried is an important and frequently a

determining factor, particularly where the decree, as here, is not wholly void but merely voidable. *Annotations,* 12 *A. L. R. 2d* 153 (1950). It is insufficient answer to say that by letting the decree stand the court gives the appearance of sanctioning an alleged fraud. When the instant petition was filed ample time remained to initiate a criminal prosecution of Charles Shammas for perjury. In the circumstances presented it was a mistaken exercise of discretion to set aside this decree and in effect to render a judicial determination that Mary Koodray Shammas lived in a manifest state of adultery with Charles Shammas, with the additional possible consequence of irregularizing the status of the present husband, if any, of Mary Shammas. These are consequences more deleterious to decency, good morals and the welfare of society than the lesser evil of letting the judgment rest.

Reversed.

*For reversal*—Chief Justice VANDERBILT, and Justices OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN —6.

*For affirmance*—Justice HEHER—1.