84 N.J. Super. 357 (1964)
202 A.2d 200
GEORGE RICHARD PAVLICKA, PLAINTIFF-APPELLANT,
v.
ELEANORE PAVLICKA, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 18, 1964.
Decided June 30, 1964.
*359 Before Judges GOLDMANN, KILKENNY and COLLESTER.
Mr. Lewis M. Holland argued the cause for appellant (Messrs. Warren, Chasan, Leyner & Holland, attorneys; Mr. Holland, on the brief).
Mr. Israel Mischel argued the cause for respondent (Mr. Louis E. Saunders, attorney).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Plaintiff appeals from a Chancery Division order of May 3, 1963, setting aside the judgment nisi entered in his favor on October 25, 1960 and the final judgment of divorce entered June 13, 1962, and ordering him to pay defendant's attorney a $500 counsel fee. Plaintiff had *360 meanwhile remarried on August 25, 1962. Thus, the effect of the order, granted as a result of proceedings initiated by defendant, was to reinstate the marriage between the parties and to nullify plaintiff's second marriage.

I.
Resolution of the legal issues requires a somewhat detailed account of the facts leading up to this appeal. On May 4, 1960 plaintiff filed his complaint for divorce, alleging that defendant had deserted him in October 1957. Defendant was personally served with process, and not having answered or otherwise moved or defended, the clerk was requested to enter her default and the case was approved for trial. The matter was heard as an uncontested action and resulted in a judgment nisi dated October 25, 1960, whereby custody of the children was awarded to plaintiff.
The judgment nisi would have become final after the expiration of three months from its entry, N.J.S. 2A:34-19; R.R. 4:98-7  i.e., January 26, 1961. However, on January 24 defendant filed a verified petition with the trial judge to vacate the judgment nisi and permit the interposing of a defense. Defendant alleged that after she had been served plaintiff told her she need not retain the services of an attorney since he did not intend to proceed with his divorce action; further, that it was plaintiff who had deserted her, and that she was ready and able to prove he was not entitled to a divorce because they had been sleeping together daily, from July to September 1960, at 1018 Bloomfield Street, Hoboken, and had engaged in sexual intercourse at 893 Pavonia Avenue, Jersey City, during the period October 20, 1960 to January 21, 1961. On the basis of this petition the trial judge immediately entered an order directing plaintiff to show cause on February 10, 1961 why an order should not be issued vacating the judgment nisi and dismissing the proceedings. The order also directed that the proceedings be stayed and no final judgment entered until further order of the court.
*361 Plaintiff's answering affidavit denied that he had tricked defendant into defaulting; renewed the assertions upon which the judgment nisi had been granted, and alleged that defendant had given birth to an illegitimate child on October 31, 1959, naming one Matthew May as the father. She had borne a second illegitimate child on August 21, 1960, but it died shortly after birth. Among other things, plaintiff charged his wife with being an habitual drunkard and creating disturbances when under the influence, and also with associating with convicted criminals. He said she had threatened on many occasions to make trouble for him and had waited until the last minute to attack the judgment nisi and reopen the case, her only purpose being to force him to permit her to visit with the children.
The result of all this was that on April 21, 1961 the trial judge entered an order vacating the judgment nisi and granting permission for the filing of an amended complaint and an answer thereto. Plaintiff then filed an amended complaint, this time seeking a divorce on the ground of adultery. He alleged that he had not had access to or sexual intercourse with defendant from the time she left him in October 1957; that as a result of adultery with some person unknown to him, she had given birth to an illegitimate child on October 31, 1959, and that in the months of August 1958 through May 1959 she had committed adultery with a Matthew May. Defendant's answer denied the adultery. She alleged, further, that plaintiff condoned the alleged acts of adultery in that, with knowledge thereof and having discussed them with her, he continued to cohabit with her from June 1960 until May 1961 at 1018 Bloomfield Street, Hoboken, 2805 Summit Avenue, Union City, and 893 Pavonia Avenue, Jersey City, N.J.
There was no further development in the cause until June 11, 1962, when the parties and their counsel appeared in court. The case was called just before the luncheon recess, at which time counsel for defendant announced in the presence of his client that she did not desire to contest the action, wanted to *362 withdraw her answer, and agreed that the judgment nisi be reinstated, except that it was now to afford her certain specified rights of visitation which had been agreed upon. The court then recessed for lunch. Following the recess defendant took the stand, testified that she was willing to have the judgment nisi reinstated, and consented to the custody and visitation arrangements. In the course of her direct examination the following transpired:
"THE COURT: Anybody making you do this?
THE WITNESS: No, nobody is making me. I have no alternative. Frankly, I don't want a divorce. My husband I love more than anything in the world.
Q. Mrs. Pavlicka, didn't you phone me yourself? A. Yes, I did. I am sorry, Mr. Saunders [defendant's attorney].
Q. And you asked me to tell the court and take this procedure? A. Yes, and I deserve it.
Q. And haven't you been after me to get this over for you? A. Yes, I'm sorry. I did desert my husband. I did everything to him, everything that he says.
Q. You arranged the appointment today? A. Yes, I did."
Plaintiff then took the stand, agreed to the visitation arrangements, and stated he understood that the amended complaint and defendant's answer were being dismissed.
An order was then and there made, dated June 11, dismissing the amended complaint and the answer thereto, setting aside the order which had vacated the judgment nisi and reinstating that judgment, awarding plaintiff custody of the infant children but with the agreed-upon visitation rights in defendant, and directing plaintiff to pay defendant or her attorney a $250 counsel fee. Final judgment of divorce was entered two days later, on June 13.
As stated, plaintiff remarried on August 25, 1962. The Pavlicka children had for some time been cared for by plaintiff's mother and two sisters  an arrangement agreeable to defendant. Apparently embittered by plaintiff's remarriage and the desire of his new wife to have the children live with them, defendant moved to have the divorce vacated. The application was in the first instance informally made by a *363 letter addressed to the trial judge on October 21, 1962, copies to the Superior Court Clerk and the respective attorneys of record. The representation of the parties had in the meantime become somewhat confused, to put it mildly. Plaintiff's attorney of record (not present counsel) was representing plaintiff's sister, adverse to plaintiff, who had joined with his new wife in her quest for custody of the Pavlicka children. Defendant's attorney of record  who continues to represent her  had after the entry of final judgment of divorce represented plaintiff before the Jersey City Municipal Court in a matter arising from a dispute between plaintiff and his family.
In her letter of October 21 defendant purported to seek the trial judge's advice, indicating she could not ask her attorney because "he had such faith in me, my honesty regarding the relationship between George and I for the period of time required to obtain a divorce so, I must rely safely on your judgment * * *." Among other things, she asked the judge whether he thought the divorce was just and legal, and why it should not be set aside.
The letter bears the definite stamp of guile. The writer was intimately acquainted with the true facts of the case and her role in the whole messy business. She had been in the employ of the very attorney who represented her, for various periods during the preceding three years, and had only recently left his office. The missive was an obvious device for getting one foot back into the door of the court.
In her letter defendant renewed her allegations of sexual relations with plaintiff. She said that they had continued to live together as husband and wife until June 10, 1962, and from June 11 (the date of the hearing above referred to) until mid-August 1962, at which time he had informed her he was remarrying. He had, in fact, had sexual relations with her on the very evening of his wedding day! By way of explaining her testimony at the June hearing and her consent to the reinstatement of the judgment nisi, defendant stated in her letter:
*364 "You may recall, your Honor, that on June 11, 1962, the day you granted the divorce, I was inebriated and unable to testify properly in my behalf when I took the stand * * * George had taken me to lunch ... A LIQUID LUNCH."
She did not, however, attempt to explain what had occurred prior to the luncheon recess.
Immediately following receipt of a copy of the letter just referred to, defendant's counsel filed his own affidavit, with the letter annexed, alleging that he was unable to locate his client but deemed it "his obligation to request that the court vacate the decree of divorce entered herein and that a rule to show cause issue commanding plaintiff to show cause why the Judgment Nisi and the Judgment of Divorce should not be vacated." The result was that on October 31, 1962 the trial judge, on his own motion, ordered that defendant's letter be deemed part of the answer she had previously filed and that a hearing be held on November 27, 1962 to determine the truth or falsity of the matters set forth in the letter and pleadings.
The hearing was not held until February 4 and 5, 1963. At that time defendant testified in some detail regarding her relations with plaintiff, the sexual contacts all occurring subsequent to the institution of his divorce action in May 1960. When plaintiff initially took the witness stand he denied that he had lived with defendant as husband and wife on Bloomfield Street, Summit Avenue or Pavonia Avenue, as testified to by her. He also specifically denied ever staying with her at the Windsor Hotel or at the Swan Motel, two other places mentioned in her testimony.
Plaintiff was followed by defendant's witnesses, who fully corroborated that the two had slept together at the places and on the occasions testified to by defendant. Plaintiff then resumed the stand. Although admitting that he had not told the truth about having been with his wife in the places she mentioned, he insisted that there had been no sexual relations, even though they had done a good deal of drinking and he had on many occasions remained overnight.
*365 Plaintiff now concedes there was sufficient proof from which the trial judge could properly have found that the parties had sexual relations pendente lite as well as after the entry of final judgment, down to the time of plaintiff's remarriage.
In his letter opinion following the hearing the trial judge said:
"* * * The defendant from all indications is a lush and the plaintiff is no better. The sad thing is that the plaintiff married a good woman when his divorce judgment was entered.

* * * * * * * *
However, the stark fact is that plaintiff perpetrated a fraud upon this court and that he perjured himself to obtain a divorce judgment. It must be noted at this juncture that none of the attorneys had anything to do with the fraud that was revealed.
This case does not fall within those cases where a long period of time elapsed before any move was made to set aside the judgment. Further, in the opinion of this court, plaintiff's remarriage does not outweigh the fraud that this plaintiff perpetrated on the court, society in general, and the defendant. * * *
This court finds as a fact that a triple fraud was perpetrated by the plaintiff. He testified falsely on three different occasions. The fraud goes to the heart of the judgment; therefore the final judgment of divorce in this matter will be set aside. This court finds the plaintiff in contempt for his giving of false and untrue testimony as above stated. His counsel may be heard in mitigation of any sentence or punishment * * *."
The judge then entered the order under appeal, dated April 3, 1963, setting aside the judgment nisi and the final judgment of divorce and directing plaintiff to pay defendant's counsel a fee of $500.

II.
The parties undoubtedly deserve each other, but our inquiry must have direction more relevant than this. Two considerations lead us to conclude that the order under review must be reversed. They are, of course, defendant's conduct with relation to the divorce proceedings, and the status of the second Mrs. Pavlicka.
The power of our courts to open a final judgment at the instance of a party upon good cause shown is settled beyond *366 controversy. R.R. 4:62-2 merely restates previously existing law in that regard when it provides, in pertinent part, that:
"On motion, with briefs, and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: * * * (c) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; * * *. The motion shall be made within a reasonable time * * *. This rule does not limit * * * the court's power to set aside a judgment, order or proceeding for fraud upon the court. * * *"
Relief for any reason allowed by the rule rests in the sound discretion of the trial court, controlled by established principles. Hodgson v. Applegate, 31 N.J. 29, 37 (1959), affirming 55 N.J. Super. 1 (App. Div. 1959). "Equitable principles are the guide in administering relief to determine whether in the particular circumstances justice and equity require that relief be granted or denied," Shammas v. Shammas, 9 N.J. 321, 328 (1952), where the court held that perjurious testimony alone, not accompanied or concealed by other and collateral acts of fraud, may be a ground for relief as a fraud upon the court in a proper case. It does not matter whether the fraud charged be denominated intrinsic or extrinsic.
To warrant disturbance of a final judgment, the perjured testimony must be shown by clear, convincing and satisfactory evidence to have been not merely false, but willfully and purposely given, and to have been material to the issue tried and not merely cumulative, but such as to have probably controlled the result. Ibid., at page 330. However, said Justice (now Mr. Justice) Brennan, who wrote for the court in Shammas, a party seeking to be relieved from the judgment must also show that the fact of the falsity of the testimony "could not have been discovered by reasonable diligence in time to offset it at the trial or that for other good reason the failure to use diligence is in all the circumstances not a bar to relief." (Italics ours)
*367 We first consider defendant's conduct throughout the divorce proceedings. By reason of personal service of the summons and complaint she knew that plaintiff was charging her with desertion since October 1957. Nonetheless, she chose not to defend the action and permitted the matter to go to hearing and judgment nisi, despite the fact that she well knew plaintiff's claim was sham and a fraud upon the court.
Defendant then waited until the very last moment before entry of final judgment to challenge the divorce proceeding by petitioning the trial judge to vacate the nisi and permit her to interpose a defense. She claimed that plaintiff had tricked her into not defending the action and alleged that she had been cohabiting with him during the alleged period of desertion and down to January 21, 1961. As noted, the judgment nisi was vacated; plaintiff was permitted to file an amended complaint (in adultery) and defendant her answer thereto. On June 11, 1962, when defendant could have fully informed the court of the continuance of cohabitation between the parties, she chose instead to say that she did not desire to contest the action, wanted to withdraw her answer, and agreed to reinstatment of the judgment nisi (with the addition of visitation rights). Indeed, she told the court she deserved what was happening  that she had deserted her husband and done everything to him that he said.
In the letter which defendant wrote the trial judge on October 21, 1962, and which resulted in a reopening of the entire matter, she represented that she was drunk and unable to testify properly in her own behalf because of the "liquid lunch" she had had with her husband during the noon recess. In his opinion letter the trial judge stated that although defendant appeared nervous when she took the stand after luncheon, she was "certainly not intoxicated." But that aside, what defendant asks us to overlook is the fact that she had arrived at her decision to withdraw her charges and reinstate the judgment nisi sometime before her appearance in court on June 11, 1962. She had informed her attorney of that decision and had him arrange for the June 11 hearing. *368 Before going out to lunch with her husband on that day she had her attorney make her decision known to the court. Further, and by her own admission, she was fully aware of what had happened at that hearing as early as the next day.
Counsel for defendant suggests that plaintiff so completely dominated his wife that her acts should be viewed as his. The record is devoid of any evidence of such domination. Certainly she was not so subjugated in mind and spirit as to keep her from eventually seeking to upset the final judgment, although belatedly so. Whether it was plaintiff's remarriage or his attempt to get the children back from his sisters and mother and into the custody of his new wife, defendant at long last decided to have the divorce set aside when she wrote the trial judge on October 21, 1962.
The fraud visited upon the court rendered the divorce judgment voidable and not void. Shammas v. Shammas, above, 9 N.J., at page 332. Defendant waited four months after entry of final judgment, with full knowledge of its void-ability, before she said or did anything. During that time marital rights vested in an innocent third party. The trial judge should have refused to set the divorce aside and left the parties where they were.
Defendant was as clearly a party to the fraud on the court as plaintiff. Not only was she guilty of unclean hands, but in the circumstances of this case she was also guilty of laches. It is not enough to say, as did the trial court, that the instant case "does not fall within those cases where a long period of time elapsed before any move was made to set aside the judgment." Time alone is not the dispositive factor. The real consideration should be whether there has been delay for a length of time which, unexplained and unexcused, is unreasonable under the circumstances and has been prejudicial. See West Jersey Title & Guaranty Co. v. Industrial Trust Co., 27 N.J. 144, 153 (1958). We refer again to the quoted language from Shammas, that a party seeking to be relieved from a judgment must show that the fact of the falsity of the testimony could not have been discovered by reasonable diligence *369 in time to offset it at the trial, or that for other good reason the failure to use diligence is in all the circumstances not a bar to relief.
Defendant relies upon Plodzien v. Plodzien, 121 N.J. Eq. 270 (E. & A. 1937), affirming the setting aside of a decree nisi and the final decree of divorce after the husband had remarried, because of his fraud upon the court. The facts of that case clearly distinguish it as controlling authority. The husband had taken his wife to Poland in 1932, knowing that she had entered this country illegally. She was unable to return to the United States because of that violation of our immigration laws. In 1935 the husband brought an action for divorce on the ground of desertion and obtained a decree nisi. The final decree was entered January 16, 1936. He had concealed from the court the fact that he had received letters from his wife whose contents clearly disclosed that she had not deserted him. The record also showed that she had consulted an attorney in Poland, who had timely written the husband's solicitor advising him of the falsity of the desertion charge. The wife filed a petition on March 6, 1936 asking the court to vacate its final decree, less than two months after it had been entered. Notwithstanding the husband's knowledge that the decree was under attack, he chose to marry again on June 1, 1936. The clear implication of the court's approach in Plodzien is that conduct on the part of a defendant like that in the present case may, where the plaintiff has remarried prior to any application for relief, result in the defendant being estopped from obtaining such relief.
The generally applicable rule in this country is that a party seeking to set aside a judgment of divorce may be barred by laches where he has been guilty of a lack of diligence in learning the facts or in seeking relief, an innocent third person having meanwhile acquired rights by or through marriage. See Annotation, 12 A.L.R.2d 153; at pages 162-169.
In Shammas, above, the administrators of the estate of the second Mrs. Shammas sought to have set aside the decrees *370 nisi and final which Shammas had obtained from his first wife, on the ground that he had wilfully given false testimony at the divorce hearing. The court held that the administrators were strangers to the record and so could not attack the divorce decree. Nor could the second Mrs. Shammas have successfully leveled a direct attack upon the decree in her lifetime. The result would be no different, said the court, if the administrators' petition were viewed as one made by members of the bar out of regard for their obligation as officers of the court to bring to its attention an alleged fraud upon it.
Justice Brennan went on to say that it would be uncharitable, now that the voice of the second wife had been silenced by death, to brand as meretricious her relationship with Shammas merely to increase the inheritance of her children by a first marriage. He said:
"* * * Innocent persons should not be involved in an intolerable situation. That one or both of the divorced parties have remarried is an important and frequently a determining factor, particularly where the decree, as here, is not wholly void but merely voidable. Annotations, 12 A.L.R.2d 153 (1950). It is insufficient answer to say that by letting the decree stand the court gives the appearance of sanctioning an alleged fraud. When the instant petition was filed ample time remained to initiate a criminal prosecution of Charles Shammas for perjury. In the circumstances presented it was a mistaken exercise of discretion to set aside this decree and in effect to render a judicial determination that Mary Koodray Shammas lived in a manifest state of adultery with Charles Shammas, with the additional possible consequence of irregularizing the status of the present husband, if any, of Mary Shammas. These are consequences more deleterious to decency, good morals and the welfare of society than the lesser evil of letting the judgment rest." (9 N.J., at pages 333-334)
So here.
Defendant's willingness to let plaintiff have his judgment of divorce despite the fact that she, better than any other person, knew his claim of desertion to be false, and her delay in finally determining to have the divorce set aside after plaintiff had remarried, should have resulted in her being denied relief. Obviously, all perjury is an affront to the *371 dignity of the court and the integrity of the judicial process, but the law is not without other effective means to punish the perjurer. The rights of the innocent third party, the second wife, should have prevailed as against the trial judge's condemnation of plaintiff's "triple fraud," and his understandable and deeply held desire to preserve the dignity of the court.

III.
We need refer only briefly to the status of the second Mrs. Pavlicka. That she is a blameless victim is established by the record. The trial judge referred to her as a "good woman" and an "innocent wife." She testified in the course of the hearing held on February 4 and 5, 1963. Neither her testimony nor the testimony of any other witness even so much as suggested that she knew plaintiff had been living with defendant as husband and wife during the alleged desertion period and after the entry of the nisi, and down to the date of plaintiff's remarriage. The vacating of the judgments nisi and final branded her relationship as meretricious. In light of the circumstances here present, considerations of justice and equity require that so heavy a penalty should not be visited upon her.

IV.
The trial judge directed that plaintiff pay defendant and her attorney a counsel fee of $500. We pass over the fact that there was no proof, either by way of affidavit of services or otherwise, by which the extent or value of counsel's services could be determined, and no showing of plaintiff's capacity to pay or of defendant's needs. More basic is the consideration that the extraordinary situation which this case presents was in large part brought about by defendant. In equity and good conscience she had no claim upon the court to be relieved of what she had helped to produce. Accordingly, the parties should individually have been required to bear the expenses *372 of their respective attorneys, and there should have been no allowance of counsel fees to defendant.
The order under review is reversed and the matter remanded to the Chancery Division for the entry of an order reinstating the judgments nisi and final. Although successful, plaintiff is not to have his costs in the circumstances of this case.