**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5928-17T4

ALBERT J. BLANCHARD
and DONNA M. BLANCHARD,

     Plaintiffs-Appellants,

v.

EDWARD D. CRITCHFIELD, SR.,
JOANN CRITCHFIELD,
WEICHERT REALTORS,
EDWARD D. CRITCHFIELD, JR.,
and 4500 ATLANTIC CORP., d/b/a
OCEANSIDE REALTY,

     Defendants-Respondents.

_____

Submitted December 10, 2019 – Decided January 21, 2020

Before Judges Yannotti and Hoffman.

On appeal from the Superior Court of New Jersey, Law Division, Cape May County, Docket No. L-0806-08.

Monzo Catanese Hillegass, PC, attorneys for appellants (F. Thomas Hillegass and John P. Amenhauser, on the brief).

The DeWeese Law Firm, PC, attorneys for respondents Edward D. Critchfield, Sr. and Joann Critchfield (David Scott DeWeese, of counsel and on the brief; David Scott DeWeese, II, on the brief).

O'Connor Kimball LLP, attorneys for respondent Weichert Realtors (Martin J. McAndrew and Glen D. Kimball, on the brief).

Margolis Edelstein, attorneys for respondents Edward D. Critchfield, Jr. and 4500 Atlantic Corp., d/b/a Oceanside Realty (Jennifer S. Coatsworth, on the brief).

PER CURIAM

Plaintiffs Albert J. Blanchard and Donna M. Blanchard appeal from an order dated August 1, 2018, which denied plaintiffs' motion to reconsider an earlier order denying their motion to reinstate their complaint. We affirm.

I.

This dispute arises from plaintiffs' purchase from defendants Edward D. Critchfield, Sr. and Joann Critchfield (the Critchfields) of a vacant lot on North Drive in West Wildwood. Weichert Realtors were plaintiffs' agents for their purchase of the property. Edward D. Critchfield, Jr., a real estate salesperson for 4500 Atlantic Corp., which does business as Oceanside Realty (collectively Oceanside), was the agent for the sellers.

2

In their complaint, plaintiffs alleged Weichert advised them that the lot was "buildable" under local zoning requirements, and that the New Jersey Department of Environmental Protection (NJDEP) previously had issued a permit pursuant to the Coastal Area Facility Review Act (CAFRA), N.J.S.A. 13:19-1 to -21, allowing development of the property. According to plaintiffs, Weichert led them to believe they would be allowed to construct a single-family dwelling on the lot.

Plaintiffs alleged that, after the closing, they learned the NJDEP had not issued a CAFRA permit for the subject lot; rather, the agency had issued the permit for a single-family dwelling on an adjoining lot. Plaintiffs claimed Weichert was grossly negligent in advising them regarding the ability to build a home on the property and in drafting the agreement of sale and related documents.

Plaintiffs further claimed the Critchfields knew the lot was not "buildable." They alleged the Critchfields knew that in 2006, the prior owner had been denied a CAFRA permit for development of the lot, and a CAFRA individual permit was required. According to plaintiffs, the Critchfields also knew the lot did not meet the criteria for an individual CAFRA permit and that the NJDEP would deny the application.

A-5928-17T4

In addition, plaintiffs claimed Oceanside had placed an advertisement for the sale of the property and did not disclose that an entity called Water's Edge Environmental (Water's Edge) had previously determined the property could not be developed. Plaintiffs alleged that Oceanside fraudulently failed to disclose Water's Edge's finding and instead advertised the subject property as suitable for construction of a "dream home."

The trial court referred the matter for mediation. On October 1, 2009, the parties entered into a consent order, settlement agreement and stipulation of dismissal without prejudice. The consent order states in pertinent part:

> . . . .
>
> 2. The parties waive the defense of the statute of limitations to and for any claim made in the [a]mended [c]omplaint or in any [c]ounterclaim or [c]rossclaim.
>
> 3. Plaintiffs . . . shall be the client of Mr. Lomax[1] for the purpose of making an application for a CAFRA permit for the construction of a single-family home on the subject lot. [Plaintiffs] shall execute all necessary documents, provide all necessary information and otherwise make a good faith effort to obtain the CAFRA permit for the construction of the single-family home on the subject lot.
>
> . . . .

---

[1] It appears that Joseph Lomax was the plaintiffs' consulting agent in connection with acquiring a CAFRA permit for the property.

A-5928-17T4

5. If the CAFRA permit is granted, the parties shall dismiss the matter with prejudice and shall execute and exchange general releases.

. . . .

8. The parties stipulate and agree that the application process is expected to take up to nine months to complete. If the application is denied or if the application is not granted within nine months of the date hereof, plaintiffs may move to re-instate the [a]mended [c]omplaint and any [c]ounterclaims or [c]rossclaims shall likewise be reinstated.

On August 13, 2010, plaintiffs filed an application for a CAFRA permit with the NJDEP. On March 26, 2018, plaintiffs filed a motion to reinstate their amended complaint, asserting that they had not been successful in obtaining the CAFRA permit. Defendants opposed the motion. Plaintiffs thereafter filed a reply certification from Lomax, who stated that his firm had "continuously tried" to obtain the CAFRA permit for plaintiffs and plaintiffs did not "s[i]t on their rights."

After hearing oral argument, Judge J. Christopher Gibson filed an opinion in which he determined that plaintiffs' motion to reinstate the amended complaint was barred by N.J.S.A. 2A:14-1, the six-year statute of limitations that applies to claims arising from a contract. The judge concluded that plaintiffs' right to reinstate the amended complaint arose from the settlement

A-5928-17T4

agreement reflected in the consent order, and the right to reinstate the amended complaint accrued nine months after the date of the consent order.

The judge noted that plaintiffs waited approximately eight years and six months after the accrual date to seek reinstatement. The judge therefore concluded the motion was barred by the six-year statute of limitations. In addition, the judge found that the equitable doctrine of laches barred plaintiffs from seeking to reinstate their amended complaint. The judge noted that plaintiffs failed to show they made a good faith effort to obtain the CAFRA permit. The judge memorialized his decision in an order dated May 25, 2018.

On June 14, 2018, plaintiffs filed a motion for reconsideration. Defendants opposed the motion. After hearing oral argument, Judge Gibson filed a written opinion in which he concluded that plaintiffs had not met the standard for reconsideration. The judge entered an order dated August 1, 2018, which denied plaintiffs' motion. This appeal followed.

II.

On appeal, plaintiffs argue the motion judge erred by denying their motion for reconsideration. Plaintiffs contend the judge erroneously applied the statute of limitations to the motion to reinstate the amended complaint. They further

argue that the court erred by finding reinstatement of the amended complaint was barred by the equitable doctrine of laches.

"Motions for reconsideration are governed by Rule 4:49-2, which provides that the decision to grant or deny a motion for reconsideration rests within the sound discretion of the trial court." Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015). "A litigant should not seek reconsideration merely because of dissatisfaction with a decision of the [c]ourt." Capital Fin. Co. of Delaware Valley, Inc. v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).

Rather, reconsideration is only appropriate in those cases "that fall within that narrow corridor in which either (1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or (2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Ibid. (quoting D'Atria, 242 N.J. Super. at 401); see also Fusco v. Bd. of Educ. of Newark, 349 N.J. Super. 455, 462 (App. Div. 2002).

On appeal, "a trial court's reconsideration decision will be left undisturbed unless it represents a clear abuse of discretion." Pitney Bowes Bank, 440 N.J.

Super. at 382 (citing Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994)). "An abuse of discretion 'arises when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Ibid. (quoting Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)).

A. Statute of Limitations.

As noted, plaintiffs argue that the six-year statute of limitations did not apply to their motion to reinstate because, in the consent order, the parties agreed to waive the statute of limitations for claims in the amended complaint. We disagree.

"An agreement to settle a lawsuit is a contract, which like all contracts, may be freely entered into and which a court, absent a determination of fraud or other compelling circumstances, should honor and enforce as it does other contracts." Brundage v. Estate of Carambio, 195 N.J. 575, 601 (2008) (internal quotations omitted) (quoting Pascarella v. Bruck, 190 N.J. Super. 118, 124-25 (App. Div. 1961)). As noted previously, "New Jersey applies a six-year statute of limitations to contract claims." In re Estate of Balk, 445 N.J. Super. 395, 398 (App. Div. 2016) (citing N.J.S.A. 2A:14-1).

When interpreting a contract, we first "examine the plain language of the contract and the parties' intent, as evidenced by the contract's purpose and surrounding circumstances." Highland Lakes Country Club & Community Ass'n v. Franzino, 186 N.J. 99, 115 (2006) (quoting State Troopers Fraternal Ass'n v. New Jersey, 149 N.J. 38, 47 (1997)). "To determine the meaning of the terms of an agreement by the objective manifestations of the parties' intent, the terms of the contract must be given their plain and ordinary meaning." Schor v. FMS Fin. Corp., 357 N.J. Super. 185, 191 (App. Div. 2002) (internal quotations omitted) (quoting Nester v. O'Donnell, 301 N.J. Super. 198, 210 (App. Div. 1997)).

Here, Judge Gibson found that the "right to reinstatement was solely a creation of the [c]onsent [o]rder[,]" and therefore, subject to the six-year statute of limitations applicable to contracts. The judge noted that plaintiffs' right to reinstate the amended complaint accrued on July 1, 2010, and plaintiffs did not file their motion for reinstatement until March 27, 2018, which was almost eight years later. The judge correctly found that the statute of limitations applied and barred the reinstatement of plaintiffs' amended complaint.

Plaintiffs contend, however, that the parties agreed in the consent order to waive the statute of limitations defense regarding the claims asserted in the

amended complaint. However, as Judge Gibson found, the right to reinstate the complaint is a right that arises under the consent order. The parties never agreed to waive the six-year statute of limitations with regard to the terms of the consent order. Indeed, the consent order does not state that the parties agreed plaintiffs could reinstate their amended complaint at any time.

Plaintiffs also contend it is disingenuous for defendants to assert the statute of limitations defense because, according to plaintiffs, defendants were "still" paying Lomax's fees for the CAFRA application process. Even if defendants were "still" paying these fees, that would not preclude them from raising the statute of limitations defense to reinstatement of the amended complaint.

B. Laches.

Plaintiffs also argue the trial court erred by refusing to reconsider its earlier determination that the equitable doctrine of laches barred reinstatement of the amended complaint. Again, we disagree.

"It is well settled that laches is 'an equitable defense that may be interposed in the absence of the statute of limitations.'" Nw. Covenant Med. Ctr. v. Fishman, 167 N.J. 123, 151 (2001) (quoting Lavin v. Bd. of Educ. of Hackensack, 90 N.J. 145, 151 (1982)). "Laches in a general sense is the neglect,

10

for an unreasonable and unexplained length of time, under circumstances permitting diligence, to do what in law should have been done. More specifically, it is inexcusable delay in asserting a right . . . ." Lavin, 90 N.J. at 151 (quoting Atlantic City v. Civil Serv. Comm'n, 3 N.J. Super. 57, 60 (App. Div. 1949)).

Laches "precludes relief when there is an 'unexplainable and inexcusable delay' in exercising a right, which results in prejudice to another party." Fox v. Millman, 210 N.J. 401, 417 (2012) (quoting Cty. of Morris v. Fauver, 153 N.J. 80, 105 (1998)). "[L]aches is not governed by fixed time limits," rather, the limits are "characteristically flexible." Id. at 418; Lavin, 90 N.J. at 151.

"[W]hether laches should be applied depends upon the facts of the particular case and is a matter within the sound discretion of the trial court." Fox, 210 N.J. at 418 (quoting Mancini v. Twp. of Teaneck, 179 N.J. 425, 436 (2004)). "The length of delay, reasons for delay, and changing conditions of either or both parties during the delay are the most important factors that a court considers and weighs." Lavin, 90 N.J. at 152 (citing Pavlicka v. Pavlicka, 84 N.J. Super. 357, 368-69 (App. Div. 1964)). "The length of delay alone or in conjunction with the other elements may result in laches." Ibid. (citing Obert v. Obert, 12 N.J. Eq. 423, 428-30 (E. & A. 1858)).

Here, Judge Gibson found plaintiffs exhibited a "general sense [of] neglect," and failed to adequately explain the extraordinary delay in seeking to reinstate the amended complaint. The judge noted that plaintiffs had submitted the Lomax certification in support of their initial motion. In that certification, Lomax stated that plaintiffs had been "continuously" seeking the CAFRA permit and did not sit on their rights.

The judge found, however, that Lomax's certification lacked sufficient detail. The judge noted that plaintiffs apparently only made a single attempt to obtain the CAFRA permit and Lomax "fail[ed] to explain any of the efforts [he] made . . . on [p]laintiffs' behalf."

We are convinced that the record supports Judge Gibson's determination that the doctrine of laches precluded plaintiffs from reinstating their amended complaint. As the record shows, after the nine-month period for seeking the CAFRA permit expired on July 1, 2010, plaintiffs waited almost eight years to file their motion to reinstate the amended complaint. Plaintiffs failed to provide any credible explanation for this lengthy and unreasonable delay.

Plaintiffs assert they did not file their motion "at the time . . . the[] CAFRA permit was initially denied[,]" because Lomax was still attempting to acquire a CAFRA permit. However, in his certification, Lomax stated only that plaintiffs

12

had been "continuously" seeking a CAFRA permit. Lomax provided no explanation for plaintiffs' extensive delay in seeking to reinstate the amended complaint. Plaintiffs also suggest that the delay was attributable to the NJDEP's Office of Dispute Resolution, but provided no factual support for the assertion.

We therefore conclude the trial court did not err by denying plaintiffs' motion for reconsideration. As the court found, there was no basis to consider the order denying plaintiffs' motion to reinstate the amended complaint.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5928-17T4