**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2435-18T2

EVERBANK,

     Plaintiff-Respondent,

v.

JOHN J. TIERNEY, III,
Individually and as Co-Executor
for the Estate of John J. Tierney, II,
DAVID LYLE SEGAL, Co-Executor
for the Estate of John J. Tierney, II,
STATE OF NEW JERSEY,
UNITED STATES OF AMERICA,
MR. ADAMS, Husband of Eileen
Adams, LAKELAND BANK,
ARCHER & GREINER PC and
KULZER & DIPADOVA PA,

     Defendants,

and

EILEEN T. ADAMS,

     Defendant-Appellant.

_____

Submitted February 3, 2020 – Decided July 15, 2020

Before Judges Ostrer and Vernoia.

On appeal from the Superior Court of New Jersey, Chancery Division, Camden County, Docket No. F-035591-14.

Kasen & Kasen, PC, attorneys for appellant (David A. Kasen, on the briefs).

McCalla Raymer Leibert Pierce LLC, attorneys for respondent (Cara Ann Murphy, on the brief).

PER CURIAM

Defendant Eileen Adams appeals from the trial court's November 30, 2018 order denying her motion to vacate a final judgment of foreclosure, and the court's January 15, 2019 order denying her motion for reconsideration. Adams questions plaintiff's standing. She challenges the validity of the assignment of mortgage to plaintiff, and contends also that plaintiff did not possess the note before filing suit. We reject the first argument and affirm.

I.

In June 2008, Adams and her husband deeded their Voorhees residence, which they owned since 2004, to Adams's father, John J. Tierney, II, for $280,000. In May 2009, Tierney borrowed $360,000 from AmTrust Bank (AmTrust), evidenced by an electronic note or "eNote," which was secured by a mortgage on the house in favor of Mortgage Electronic Registration Systems,

2

Inc. (MERS) as nominee for AmTrust, its successors and assigns. Tierney passed away three months later, leaving his interest in the house to Adams. A few months after that, the Office of Thrift Supervision placed AmTrust into receivership, and the Federal Deposit Insurance Corporation (FDIC) became receiver. Under a purchase and assumption agreement with the FDIC, the New York Community Bank (NYCB) acquired AmTrust's assets and liabilities, subject to various exceptions. Whether the Tierney loan was excluded is difficult to discern, as the record includes a redacted version of the purchase and assumption agreement. Omitted are schedules of various excluded assets, including a list of over 5000 non-performing residential loans.[1]

Notwithstanding the FDIC agreement with NYCB, the Tierney note and mortgage went elsewhere. According to the eNote Transfer History, at the FDIC's request, on February 4, 2010, TIAA, FSB became the new servicing agent on the note.[2] According to the eNote Transfer History, on January 23,

---

[1] Conceivably, in the months immediately following Tierney's death, the mortgage may have been non-performing.

[2] The eNote Transfer History described an "Action Type: Transfer of Servicing Agent" and listed "Requesting Party: . . . FDIC as Receiver for AmTrust Bank." Neither party presented a certification from a person familiar with the nomenclature in the eNote Transfer History, to illuminate the meaning or significance of these entries.

A-2435-18T2

2014, control of the note was also transferred to TIAA, FSB.[3] In the meantime, in November 2013, MERS – as nominee of AmTrust and its successors and assigns – assigned the Tierney mortgage to EverBank. It was recorded the following month.

Adams asserted she was unaware of AmTrust's 2009 failure. She defaulted in August 2013.

EverBank filed its complaint for foreclosure in August 2014. Adams filed a pro se answer asserting a lack of standing among other defenses. However, she did not oppose EverBank's subsequent summary judgment motion. In October 2015, the court granted EverBank's motion and converted Adams's answer to non-contesting.

According to the eNote Transfer History, on May 11, 2016, TIAA, FSB, transferred control and servicing of the note to Nationstar Mortgage LLC (Nationstar).[4] In July 2016, EverBank assigned the mortgage to Nationstar, but

---

[3] The eNote Transfer History described an "Action Type: Transfer Control and Location - Seasoned"; listed Fannie Mae as the "Requesting Party" and TIAA, FSB as the "New Controller Org."

[4] The eNote Transfer History described an "Action Type: Transfer All - Seasoned" and listed TIAA, FSB as the "Requesting Party" and Nationstar Mortgage LLC as the "New Controller Org," the "New Location," and the "New Servicing Agent."

A-2435-18T2

EverBank continued to litigate the foreclosure case without a formal substitution of parties.

Notwithstanding the assignment to Nationstar, a Nationstar document specialist stated, in a February 2017 affidavit supporting EverBank's motion for entry of final judgment, that Nationstar was EverBank's servicer; and EverBank then held the note and mortgage. The specialist did not provide the basis for her knowledge, other than a general reference to Nationstar's business records.

Adams did not oppose the motion and final judgment was entered on March 21, 2017.

That same day, Adams and her husband filed a bankruptcy petition. They received an order of discharge on June 30, 2017. On January 9, 2018, Adams filed another bankruptcy petition. On September 6, 2018, the court granted Adams limited relief from the automatic stay, allowing her to file a motion to vacate the final judgment, which she did on September 26, 2018.

Adams argued EverBank lacked standing to bring the foreclosure action because it possessed neither the note nor a valid assignment of the mortgage before it filed its complaint. Adams argued that EverBank did not appear as the holder of the note in the MERS eRegistry, which identified various electronic transfers of the note. Adams also contended the assignment of mortgage to

A-2435-18T2

EverBank was invalid because AmTrust, on whose behalf MERS purported to act, no longer possessed an interest in the mortgage because of the FDIC-NYCB agreement. Adams claimed that AmTrust's 2009 failure, and the record of the note's transfers, was newly discovered evidence under Rule 4:50-1(b); and EverBank's claim that it was the holder of the note and mortgage was a misrepresentation under Rule 4:50-1(c).

The trial court found that Adams's motion was time-barred because she filed it over one year after the judgment, see Rule 4:50-2, but the court also denied the motion on the merits. The judge noted evidence of AmTrust's failure was not new evidence as it was a matter of public record when the complaint was filed. The judge also rejected Adams's attack on standing, which relied on an unpublished decision of our court, which the trial judge distinguished.

The trial court also denied Adams's subsequent motion for reconsideration. Again reaching the merits, the judge concluded that EverBank was the holder of the note based on the electronic record of the transfer to TIAA, FSB; the judge found, based on a particular exhibit, that TIAA, FSB was in fact EverBank.[5] The judge rejected Adams's challenge to the assignment of the

---

[5] EverBank's counsel conceded that the motion record did not include competent evidence regarding the nature and timing of the TIAA, FSB merger with

mortgage, finding that AmTrust's failure did not deprive MERS of the power to assign the mortgage to EverBank. The judge determined EverBank was not obliged to produce evidence of AmTrust's failure as it was not a party to the transaction between AmTrust and MERS.

On appeal, Adams reprises her argument that EverBank lacked standing and urges us to vacate the final judgment under Rule 4:50-1(b), (c), (e), and (f).

II.

We review a trial court's decision on a motion to vacate final judgment for an abuse of discretion. U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012). We find no abuse of discretion here.

We shall assume for purposes of this appeal that Adams's motion was timely. A motion for relief from a judgment under Rule 4:50-1 must be filed within a reasonable time; and, if based on Rule 4:50-1(a), (b), or (c), within one year. R. 4:50-2. While the automatic bankruptcy stay was in place, the

---

EverBank. The judge apparently referred to the MERS eRegistry which indicated that TIAA, FSB requested a "Transfer All - Seasoned" on May 11, 2016. However, we find no support in the record for the court's conclusion that the document had "a notation . . . stating TIAA, FSB is in fact EverBank" as of May 11, 2016. We note that, according to an 8K form TIAA, FSB filed with the Securities and Exchange Commission, of which we take judicial notice, see N.J.R.E. 201(b)(3), N.J.R.E. 202(b), TIAA, FSB Holdings, Inc. merged with EverBank Financial Corp. in 2017, completing a transaction announced in 2016. See TIAA FSB Holdings, Inc., Current Report (Form 8-K) (June 9, 2017).

Bankruptcy Code suspended the running of the one-year period under Rule 4:50-2 for filing a motion to vacate under Rule 4:50-1(a), (b) or (c). See 11 U.S.C. § 108(c)(1). Once the stay was lifted, Adams had thirty days to file her motion. See 11 U.S.C. § 108(c)(2). She filed within that time. See Aslanidis v. United States Lines, Inc., 7 F.3d 1067, 1073 (2d Cir. 1993) (noting that section 108(c)(1) suspends, but does not toll, deadlines in federal or state statutes, and section 108(c)(2) provides a one-time, thirty-day extension of deadlines, even if already expired, running from the date of the notice of termination of the stay); see also Nativo v. Grand Union Co., 315 N.J. Super. 185, 188 (App. Div. 1998) (noting that the automatic stay does not toll the running of a statute of limitations; rather, a party has thirty days to file an action against which the limitations period has otherwise run). We shall also assume that the motion was also filed "within a reasonable time." R. 4:50-2.

To secure relief from the foreclosure judgment, Adams principally relies on Rule 4:50-1(b) and (c). Rule 4:50-1(b) allows relief from a judgment based on "newly discovered evidence which would probably alter the judgment or order and which by due diligence could not have been discovered in time to move for a new trial under R. 4:49." Under subsection (b), "the party seeking relief must demonstrate 'that the evidence would probably have changed the

result, that it was unobtainable by the exercise of due diligence for use at the trial, and that the evidence was not merely cumulative.'" DEG, LLC v. Twp. of Fairfield, 198 N.J. 242, 264 (2009) (quoting Quick Check Food Stores v. Twp. of Springfield, 83 N.J. 438, 445 (1980)).

To satisfy Rule 4:50-1(c) – allowing relief based on "fraud . . ., misrepresentation, or other misconduct of an adverse party" – the fraud or misrepresentation "must be shown by clear, convincing and satisfactory evidence to have been not merely false, but willfully and purposely given, and to have been material to the issue tried and not merely cumulative, but such as to have probably controlled the result." Pavlicka v. Pavlicka, 84 N.J. Super. 357, 366 (App. Div. 1964). Furthermore, the movant must show that "the fact of the falsity of the testimony 'could not have been discovered by reasonable diligence in time to offset it at the trial or that [f]or other good reason the failure to use diligence is in all the circumstances not a bar to relief.'" Ibid. (emphasis in original) (quoting Shammas v. Shammas, 9 N.J. 321, 330 (1952)).

For purposes of our analysis of Adams's motion under subsections (b) and (c), we assume, without deciding, that she could not have discovered, by the exercise of due diligence, the fact that AmTrust failed, NYCB obtained AmTrust assets (but not all Amtrust assets), and the eNote Transfer History did not list

EverBank as a transferee. We conclude nonetheless that the discovery would not have enabled Adams to prevail on her defense that EverBank lacked standing; consequently, the trial court did not err in declining to vacate the judgment on that ground.

"[E]ither possession of the note or an assignment of the mortgage that predated the original complaint confer[s] standing." Deutsche Bank Trust Co. Americas v. Angeles, 428 N.J. Super. 315, 318 (App. Div. 2012) (citing Deutsche Bank National Trust Co. v. Mitchell, 422 N.J. Super. 214, 216 (App. Div. 2011)). It suffices to focus on the assignment of the mortgage.[6]

The assignment of mortgage was executed in November 2013 by MERS as nominee not only for AmTrust, but also its successors and assigns. It was duly recorded in December 2013, before EverBank filed its complaint. The trial court rejected Adams's argument that the assignment was ineffectual. For two reasons, we shall not disturb the trial court's determination.

---

[6] Therefore, we need not reach the trial court's conclusion that TIAA, FSB – to which the note was transferred in 2010 according to the eNote Transfer History – was one and the same as EverBank – which filed the foreclosure action in 2014 – absent competent evidence in the record regarding the two entities' relationship. The Nationstar employee's certification in 2017 that EverBank was then the holder of the note and mortgage – assuming for argument's sake that the employee had a basis in personal knowledge for that assertion – does not address the question regarding pre-suit control of the note.

A-2435-18T2

First, Adams failed to demonstrate, as a factual matter, that NYCB acquired the Tierney mortgage along with other AmTrust assets under the FDIC-NYCB asset purchase agreement; or that MERS lacked authority to assign the Tierney mortgage to EverBank. The FDIC-NYCB agreement stated that NYCB acquired various AmTrust assets, subject to numerous exceptions set forth in schedules. But those were redacted from the document presented to the trial court. Notably, notwithstanding the FDIC-NYCB agreement, Adams has not produced any evidence of a recorded assignment of the mortgage to NYCB. Also, the fact that AmTrust may not have existed in 2013 does not necessarily mean MERS lacked authority to transfer the mortgage, as MERS was the nominee not only of AmTrust, but also its successors and assigns. As the party seeking relief from the judgment, Adams had the burden – not plaintiff – to establish grounds for relief. See Jameson v. Great Atl. & Pac. Tea Co., 363 N.J. Super. 419, 425-26 (App. Div. 2003). Adams failed to meet her burden.

Second, any claim that MERS acted in derogation of NYCB's rights, is not for Adams to assert. Adams is not a party to the FDIC-NYCB agreement, nor is she a third-party beneficiary. Therefore, she lacks standing to assert a claim that MERS acted in breach of the agreement. See Rajamin v. Deutsche Bank Nat'l Trust Co., 757 F.3d 79, 88-90 (2d Cir. 2014) (holding that mortgagors

lacked standing to complain that the assignment of their mortgages to the defendant violated the terms of a pooling agreement in which the mortgagors' original lender was a party)[7]; Correia v. Deutsche Bank Nat'l Trust Co., 452 B.R. 319, 324 (B.A.P. 1st Cir. 2011) (stating that debtors lacked standing to object that an assignment of their mortgage violated a pooling and servicing agreement because they were neither parties to, nor third-party beneficiaries of, the agreement); Livonia Prop. Holdings, L.L.C. v. 12840-12976 Farmington Rd. Holdings, L.L.C., 717 F. Supp. 2d 724, 736-37 (E.D. Mich. 2010) (stating "a litigant who is not a party to an assignment lacks standing to challenge that assignment"), aff'd, 399 F. App'x 97 (6th Cir. 2010).

To the extent not addressed, Adams's remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[7] The Second Circuit in Rajamin noted that the plaintiffs failed to assert any real threat of harm based on the claim that their mortgages were held by someone other than the defendant. 757 F.3d at 85. The court noted, "[P]laintiffs' challenge to defendants' claim of ownership of plaintiffs' loans, implying that the loans are owned by some other entity or entities, is highly implausible, for that would mean that since 2005 there was no billing or other collection effort by owners of loans . . . ." Ibid. The court deemed the danger that the plaintiffs' would have to make duplicate loan payments was "entirely hypothetical." Ibid. In this case, no one has made an effort to enforce the right to foreclose against Adams since the 2013 default, other than EverBank.

A-2435-18T2